**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

BENNIE IRVIN,

       Petitioner,                           Case No. 04-CV-71572-DT

v.

RAYMOND BOOKER,

       Respondent,

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Bennie Irvin, ("Petitioner"), presently incarcerated at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for one count of second-degree murder,[1] and one count of felony-firearm.[2] For the reasons stated below, the petition for writ of habeas corpus will be denied.

### I.  BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. The court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals's opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001).

---

[1]  Mich. Comp. Laws § 750.317; Mich. Stat. Ann. 28.549.

[2]  Mich. Comp. Laws § 750.227b; Mich. Stat. Ann. 28.424 (2).

Defendant was charged in the shooting death of Tyrus Chipp, which occurred outside Chipp's home.  As Chipp turned to go into the home, defendant shot him five times, striking Chipp in his back, the back of his neck, and the back of his head.  Defendant claimed that he and Chipp had an ongoing feud, and that he shot Chipp in self-defense because he believed Chipp was reaching for a gun.

*People v. Irvin*, 226740, at *1 (Mich. Ct. App. Sept. 20, 2002).

Petitioner's conviction was affirmed on appeal. *Id., leave to appeal denied at* 661 N.W. 2d 240 (Mich. 2003).  Additional relevant facts will be discussed when addressing Petitioner's claims.

In his April 27, 2004 petition, Irvin seeks habeas relief on the following grounds:

I.  The trial court committed reversible error by failing to make any inquiry concerning the fact that the jury was exposed to extraneous information which may have prejudiced defendant.

II.  Bennie Irvin was denied a fair trial and due process of law under the state and federal constitutions where the prosecutor engaged in improper conduct and argument.

III.  Defendant-Appellant was denied effective assistance of counsel where counsel failed to object to some of the prosecutor's misconduct, where counsel failed to request the necessarily included offense of manslaughter, failed to request a cautionary instruction, and failed to ask for a hearing on extraneous influence of the jury.

IV.  Defendant Bennie Irvin's conviction should be reversed where the multiple errors denied him due process of law and a fair trial under both the state and federal constitutions.

V.  Bennie Irvin was entitled to resentencing where the trial judge "assumed" without evidentiary basis the existence of an offense variable, failed to recognize the existence of the grounds to depart below the applicable guidelines, and imposed a sentence which violated the doctrine of proportionality.

VI.  The trial judge committed plain error by failing to give a cautionary instruction that impeachment by inconsistent statement is not substantive evidence as the prosecutor unfairly and improperly argued.

VII.  The defendant was denied effective assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments under the United States Constitutions and Article 1, Section 20, for failure to request an evidentiary hearing.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 410-11.

3

## III. DISCUSSION

### A.  Claim # 1

Petitioner first claims that the trial court erred in failing to inquire into the possibility that the jurors in his case may have been exposed to extraneous information in the form of disruptions or comments made by members of the audience in the courtroom.  Petitioner refers to comments made by the trial court judge following the testimony of a prosecution witness, where, outside of the jury's presence, the trial court judge admonished the members of the audience and advised them that if any of them became emotional and felt the need to cry or make noise, they would have to leave the courtroom.  The trial court informed the audience members that they would be removed from the courtroom if they made any comments.  The trial court judge further indicated that after assessing the situation and out of concern for the safety of all those involved, Petitioner's bond would be revoked.

In rejecting Petitioner's claim, the Michigan Court of Appeals first observed that Petitioner had failed to establish that any audience disruption had actually occurred, finding that the trial court's admonition may only have been a preventive warning to the members of the audience.  The Michigan Court of Appeals further held that audience interruptions do not necessarily rise to the level of being extraneous facts or evidence. *People v. Irvin*, Slip. Op. at * 2.

A habeas petitioner must prove the existence of juror prejudice resulting from an extraneous or extrinsic influence by a preponderance of the evidence.  *See De La Rosa v. Texas,* 743 F.2d 299, 306 (5th Cir. 1984).  As an initial matter, Petitioner has

4

failed to establish that the jurors were actually exposed to any prejudicial comments or outbursts made by members of the audience. As the Michigan Court of Appeals indicated, there is nothing in the record to establish that the trial court's admonition to the audience was anything more than a warning to prevent the audience members from making comments or remarks that would infect the fairness of the trial. Petitioner has failed to demonstrate specifically and without speculation that any jury impropriety occurred. He has further failed to demonstrate the presence of any extraneous information or outside influence on the jurors. *See Tejada v. Dugger,* 941 F.2d 1551, 1561 (11th Cir. 1991).

The United States Constitution does not require a state trial court to *sua sponte* conduct a full-blown evidentiary hearing or inquiry every time that a courtroom spectator makes a comment or remark within the jury's hearing. *See White v. Smith,* 984 F.2d 163, 166 (6th Cir. 1993). "[W]here the communication is innocuous and initiated by a spectator in the form of an outburst, a hearing is not necessarily required." *Id.* In the present case, Petitioner does not indicate the content of the alleged outbursts by the spectators, or whether these comments were prejudicial against him. Based on the facts and the record, the court concludes that the trial court's failure to conduct an evidentiary hearing to determine the impact of any alleged spectator comments upon the jury in this case did not deprive Petitioner of fundamental fairness. *Id.* at 167. Petitioner is not entitled to habeas relief on his first claim.

## B. Claim # 2

Petitioner next alleges that he was deprived of a fair trial by numerous incidents

5

of prosecutorial misconduct.

Respondent claims that many of Petitioner's prosecutorial misconduct claims are procedurally defaulted because Petitioner failed to object to the comments at trial and the Michigan Court of Appeals relied on this failure, at least in part, in rejecting his claims. Petitioner, however, alleges in his third claim, *see infra*, that his trial counsel was ineffective for failing to object to these comments and remarks.

Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier for the court simply to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004). In this case, because "the procedural default issue raises more questions than the case on the merits," the court will assume, for the sake of resolving the claims, that there is no procedural default by Petitioner and will decide the merits of the claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (internal quotation omitted) (assuming without deciding that no procedural default existed and examining the petitioner's habeas claim on the merits).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Mich. Dep't of Corrs.*, 4 F.3d 1348, 1355-56 (6th Cir. 1993). Because this case is a habeas case and is not a direct appeal, the

6

inquiry into this issue is less stringent.  *See Millender v. Adams*, 187 F. Supp. 2d 852, 875 (E.D. Mich. 2002), *aff'd* 376 F. 3d 520 (6th Cir. 2004), *cert. denied* 125 S. Ct. 1645 (2005).

When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper.  *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ.  *Id.*  In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra,* 4 F.3d at 1355-56.

Petitioner first claims that the prosecutor infringed upon his right to counsel and his right to remain silent by eliciting testimony that Petitioner turned himself into the police accompanied by his attorney, but that he failed to turn over the murder weapon or make a statement.

A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident which gives rise to the criminal charges, implies guilt.  A prosecutor must also refrain from suggesting to the jury that a defendant hired an attorney to generate an alibi or to get his or her "story straight."  *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990) (internal citations omitted).

Habeas relief, however, should be denied where the prosecutor's comments

7

offer no suggestion that the petitioner's hiring of an attorney establishes his or her guilt. *Ridley v. Walter*, No. 99-35240, 1999 WL 1040089, at *1 (9th Cir. November 5, 1999). In *Samu v. Elo*, 14 Fed.Appx. 477, 479 (6th Cir. 2001), the Sixth Circuit held that a federal habeas petitioner failed to show any prejudice resulting from the prosecutor's comment that petitioner had consulted with an attorney shortly after the murder for which he was convicted, where the comment was an isolated incident which occurred during cross-examination and was not revisited or developed during closing argument.

Although unpublished decisions in the Sixth Circuit are not binding precedent, *see Sheets v. Moore,* 97 F.3d 164, 167 (6th Cir. 1996) (unpublished opinions "carry no precedential weight [and] have no binding effect on anyone other than the parties to the action."); *Salamalekis v. Comm'r of Soc. Sec.,* 221 F.3d 828, 833 (6th Cir. 2000)(unpublished decisions are not binding precedent), their reasoning may be instructive or helpful.  *See Harper v. AutoAlliance Intern., Inc.,* 392 F.3d 195, 205 (6th Cir. 2004) ("Unpublished decisions of this Court are not binding authority, but nevertheless can be persuasive authority."); *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 593 (6th Cir. 2004) (although *Willits* [*v. Peabody Coal Co.,* 188 F.3d 510, 1999 WL 701916 (6th Cir. September 1, 1999)] is an unpublished opinion, its reasoning is instructive.")

In the present case, the prosecutor referred briefly to the fact that Petitioner had turned himself in to the police with counsel during her questioning of Detective John Bennett.  The prosecutor did not imply in these questions that Petitioner brought counsel with him to the police station in order to somehow obstruct the investigation or to hide his guilt.  Petitioner is unable to show any prejudice which resulted from the prosecutor's questions about Petitioner coming into the police station with his attorney,

8

because the questions were an isolated incident which occurred during the examination of a witness and the issue was not revisited or developed during closing argument by the prosecutor.

The prosecutor's questions and comments also did not impinge on Petitioner's right to remain silent. The prosecutor asked Detective Bennett if Petitioner had ever made any police complaint prior to turning himself in that the victim had threatened him with a gun. In response to further questioning, Detective Bennett indicated that Petitioner did not produce the firearm used in the murder when he turned himself in to the police.

The Supreme Court has held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980). In addition, in the absence of any indication that a criminal defendant had received his *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606-07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.*

In the present case, Petitioner testified that he shot the victim in self-defense. The prosecutor's questions to Detective Bennett about Petitioner's failure to report being threatened by the victim prior to turning himself in to the police involved his pre-

9

arrest silence.  References to Petitioner's pre-arrest silence would have been

permissible under *Jenkins* to impeach his credibility.  Likewise, Detective Bennett was

asked about Petitioner's failure to produce the murder weapon when he *initially* walked

into the police station with his attorney.  Since there is no indication that he was in

custody requiring *Miranda* warnings upon his initial arrival at the police station, any

references to Petitioner's failure to produce a weapon when he walked into the police

station did not violate his constitutional rights and would have been permissible to

impeach the credibility of his self-defense claim.  *See Seymour v. Walker,* 224 F.3d

542, 560 (6th Cir. 2000) (while use of pre-arrest silence as substantive evidence of

guilt violates a defendant's Fifth Amendment rights, prosecutor's use of pre-arrest

silence to impeach and shed doubt on self-defense claim were not improper).

Petitioner next claims that the prosecutor improperly implied that she knew the

truth of the incident when she appeared to disbelieve her own witness, Tykishe Chipp.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or

the credibility of trial witnesses, because providing such personal assurances of guilt or

vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate

advocates' role by improperly inviting the jurors to convict the defendant on a basis

other than a neutral independent assessment of the record proof." *Caldwell v. Russell*,

181 F.3d 731, 737 (6th Cir. 1999) (internal citations omitted).  It is worth noting,

however, that the Sixth Circuit has never granted habeas relief for improper vouching.

*Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000).  Even on direct appeal

from a federal conviction, the Sixth Circuit has held that to constitute error, a

prosecutor's alleged misconduct of arguing his personal belief in a witness' credibility

or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

The court in *Humphrey* applied a four part test to determine prosecutorial misconduct.  An error is flagrant: (1) if it tends to mislead the jury or prejudice the defendant; (2) if it is one of a series of inappropriate comments; (3) if it was deliberately placed before the jury; and (4) if other evidence of guilt is weak.  In the present case, there is no evidence that the prosecutor's comments misled the jury or were prejudicial against the defendant.  Furthermore, Petitioner points to only one question by the prosecutor which arguably amounted to improper vouching.  Also, in *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000), the court noted that "although the comments were deliberately placed before the jury, the prosecutor was merely speculating about possible inferences from the evidence."  Finally, in the present case, the evidence against the defendant is strong.  Taking these factors into account, the alleged error was not flagrant.  Because the prosecutor's conduct was not flagrant or repeated, Petitioner is not entitled to habeas relief on this claim.

Petitioner next claims that the prosecutor violated his attorney-client privilege by picking up a file labeled "self-defense" from the defense table during the cross-examination of Petitioner and asking Petitioner if he had reviewed this file.  The "[a]ttorney-client privilege is a creation of the common law, not the Constitution." *Smith v. Moore,* 137 F.3d 808, 819 (4th Cir. 1998) (*quoting Lange v. Young*, 869 F.2d 1008, 1012, n.2 (7th Cir. 1989)).  Because federal habeas review is limited to "violations of the United States Constitution or its law and treaties," a mere violation of petitioner's attorney-client privilege would not warrant habeas relief.  *Smith,* 137 F.3d at 819.

11

Therefore, while the right of a defendant to a confidential relationship with his or her attorney appears to be guaranteed by the Sixth Amendment, the mere possibility of a violation of that right does not provide a basis for federal habeas corpus relief.  *See Hardaway v. Withrow,* 147 F. Supp. 2d 697, 705 (E.D. Mich. 2001), *aff'd in part and rev'd in part on other grds,* 305 F.3d 358 (6th Cir. 2002), *cert. denied* 538 U.S. 1036 (2003); *see also Layer v. Lyles*, 598 F. Supp. 95, 104 (D. Md. 1984).  Petitioner is therefore not entitled to habeas relief on this portion of his claim even if his attorney-client privilege had been violated, which is not at all clear from the facts.

Petitioner next claims that the prosecutor denigrated defense counsel and the notion of self-defense during her closing argument.  In support of his argument, Petitioner points to *Gall v. Parker,* 231 F.3d 265, 313 (6th Cir. 2000), where the Sixth Circuit held that a state court prosecutor committed misconduct when he attacked the petitioner's use of an insanity defense by criticizing the whole concept of the defense of insanity, rather than addressing the evidentiary merits of the petitioner's insanity defense head on.  By contrast, when viewing the prosecutor's comments in context in this case, the prosecutor did not appear to criticize the whole concept of the defense of self-defense, but instead, addressed the evidentiary weaknesses in Petitioner's self-defense claim.

Petitioner also complains that the prosecutor in her closing argument "compare[d] him" to Jeffrey Dahmer.  The prosecutor, however, did not "compare" *Petitioner* to Dahmer, but only used the Dahmer case as a then-current example of a defense in which, like Petitioner's self-defense claim, the act is admitted:

Ladies and Gentlemen, pretty much when someone chooses to assert a

12

> defense, it is usually in one of two categories; either I didn't do it, such as: You have got the wrong person, you have misidentified me . . . . Those are two examples of defenses that fall into the I didn't do it [category].
>
> In this case, you have the defense of I did it, but.  I did it, but.  Jeffrey Daumer [sic] for example, yes, I killed twelve men, but I was insane; according to him.  In other words, they admit to the act that led to the death, but they have some reason that they want to excuse or justify or mitigate it.  In this case, Bennie Irvin wants to say: I did it, but I thought he was going for a gun."

(07/11/00 Transcript at 161-62.)

The Michigan Court of Appeals agreed that the prosecutor's unobjected-to reference to the insanity defense was "improper," but found that the statement was an isolated remark minimized by the trial court's instruction that arguments of counsel were not evidence.  *People v. Irvin*, 226740, at *3 (Mich. Ct. App. Sept. 20, 2002).

The Michigan Court of Appeals finding that the statement was isolated and harmless was neither contrary to clearly established federal law, nor an unreasonable application thereof.  The prosecutor's fleeting reference to Dahmer was not so egregious as to render Petitioner's trial fundamentally unfair.  *See Farmer v. Hofbauer,* 1 Fed.Appx. 372, 381 (6th Cir. 2001) (single reference comparing petitioner to Hitler did not merit habeas relief); *see also Byrd*, 209 F.3d at 536 (prosecutor's use of "predator" to describe murder defendant did not deprive petitioner of a fair trial).

Petitioner also claims that the prosecutor shifted the burden of proof in her closing arguments.  The trial court, however, instructed the jury that the Petitioner was presumed innocent, that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt, and that the burden never shifted to Petitioner.  In the present case, the prosecution's argument did not deprive Petitioner of a fair trial,

13

because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002).

Petitioner lastly complains that the prosecutor improperly urged the jury to use impeachment evidence as substantive evidence of Petitioner's guilt. Petitioner claims that the prosecutor urged the jury to consider a prior inconsistent statement that Tykishe Chipp made to the police as substantive evidence. Petitioner further alleges that the prosecutor committed misconduct by arguing to the jury that they could use prior inconsistent statements made by Tykishe Chipp at Petitioner's preliminary examination as substantive evidence of Petitioner's guilt.

With respect to Petitioner's first claim, there is no indication that the prosecutor asked the jury to use Chipp's statement to the police as substantive evidence. Instead, it appears that the prosecutor argued to the jury that they could evaluate her credibility as a witness in light of the statement that she had given to the police. Further, there was nothing improper in the prosecutor urging the jury to consider Chipp's preliminary examination testimony as substantive evidence. Under both federal and Michigan law, a prior inconsistent statement that his made under oath is not considered hearsay and can be used as substantive evidence. *See United States v. Ricketts*, 317 F.3d 540, 544 (6th Cir. 2003) (citing Fed. R. Evid. 801(d)(1)(A)); *People v. Chavies,* 593 N.W. 2d 655, 658 (Mich. Ct. App. 1999) (citing M.R.E. 801(d)(1)(A)). The prosecutor's argument was therefore proper. Petitioner is not entitled to habeas relief on his second claim.

**C.  Claims # 3 and # 7**

14

The court will consolidate Petitioner's third and seventh claims for the purposes of judicial economy.  In his third claim, Petitioner alleges the ineffective assistance of trial counsel.  In his seventh claim, Petitioner contends that appellate counsel was ineffective for failing to move for an evidentiary hearing on his first claim involving extraneous influences on the jury and on his third claim involving ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance.  *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.  *Id.* at 689.  Second, the defendant must show that such performance prejudiced his defense.  *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel.  *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005).

In his third claim, Petitioner first contends that his trial counsel was ineffective for failing to object to the various instances of prosecutorial misconduct that he claims

15

occurred in this case.  Because the court has already concluded that the prosecutor's questions or remarks did not prejudice Petitioner so as to deprive him of a fair trial, Petitioner's claim that counsel rendered ineffective assistance by failing to object to the prosecutor's remarks must also be rejected.  *Millender*, 187 F. Supp. 2d at 876.

Petitioner next claims that trial counsel was ineffective for failing to ask the court to instruct the jury on the lesser included offense of voluntary manslaughter.  In rejecting this claim, the Michigan Court of Appeals held that Petitioner had failed to overcome the presumption that his attorney's "'all-or-nothing' approach to conviction or acquittal was a matter of sound trial strategy."  *People v. Irvin*, Slip. Op. at *4.

A failure to request charges on all possible lesser included offenses may be proper trial strategy.  *Colon v. Smith*, 723 F. Supp. 1003, 1008 (S.D.N.Y. 1989); *see also Franza v. Stinson*, 58 F. Supp. 2d 124 (S.D.N.Y. 1999).  Submission of lesser included offenses may give the jury a basis of finding petitioner guilty of a crime where the prosecution may be unable to prove the elements of the original crime beyond a reasonable doubt.  Because counsel may have wished to avoid this possibility, the decision not to request lesser included offenses is not ineffective assistance of counsel. *Colon*, 723 F. Supp. at 1008; *see also Lewis v. Russell,* 42 Fed.Appx. 809, 810-11 (6th Cir. 2002) (trial counsel's failure during murder trial to request jury instruction on lesser-included offense of voluntary manslaughter constituted reasonable strategic decision consistent with defendant's effort to seek full acquittal on basis of self-defense, and thus did not constitute deficient performance).

Petitioner next contends that his trial counsel should have requested that the trial court give the jury a cautionary instruction that Petitioner's disposal of the gun

16

should be given only limited consideration.  Petitioner essentially argues that the jury

should have been given a modified version of CJI 2d 4.4, the instruction on flight.

      In rejecting this claim, the Michigan Court of Appeals ruled that inviting attention

to the fact that Petitioner had disposed of the gun would have compromised

Petitioner's story that he turned himself in as quickly as possible to the authorities.  The

Michigan Court of Appeals further ruled that had such an instruction been given,

Petitioner's actions could actually have been "afforded greater culpability." *People v.*

*Irvin,* Slip. Op. at *5.

      The flight instruction, indicates that a defendant's flight may be considered by a

jury as consciousness of guilt.  A defendant is not denied the effective assistance of

counsel by his attorney's failure to request a cautionary instruction which would

necessarily remind the jurors that an adverse inference might be drawn against the

defendant.  *See United States v. Myers,* 917 F.2d 1008, 1010-11 (7th Cir. 1990)

Because a modified version of Michigan's flight instruction would have reminded the

jurors that they could use Petitioner's disposal of the murder weapon as consciousness

of guilt, counsel was not ineffective in failing to request such an instruction.

      Petitioner next claims that both appellate and trial counsel were ineffective for

failing to request a hearing on the issue of whether the jury was exposed to extraneous

information.  In this case, appellate and trial counsel's failure to demand an evidentiary

hearing on whether the jury had been exposed to extraneous information did not

prejudice Petitioner, because there has been no competent evidence presented in this

case of any improper contact with the jury. *See Ida v. United States,* 207 F. Supp. 2d

171, 186 (S.D.N.Y. 2002).

Lastly, Petitioner contends that his appellate counsel was ineffective for failing to request an evidentiary hearing on his ineffective assistance of trial counsel claims. Because petitioner has failed to show that his ineffective assistance of trial counsel claim had merit, Petitioner is unable to establish that appellate counsel was ineffective for failing to seek an evidentiary hearing on his ineffective assistance of trial counsel claims on his appeal of right. *See, e.g., Mackenzie v. Portuondo,* 208 F. Supp. 2d 302, 319-20 (E.D.N.Y. 2002) (habeas petitioner did not suffer any prejudice from appellate counsel's allegedly deficient performance at post-trial hearing, where underlying claims lacked merit). Petitioner is not entitled to habeas relief on his third and seventh claims.

### D.  Claim # 4

In his fourth claim, Petitioner alleges that he was deprived of a fair trial because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Therefore, Petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; see also Salters v. Palmer,* 271 F. Supp. 2d 980, 992 (E.D. Mich. 2003).

### E.  Claim # 5

Petitioner next raises a number of challenges to his sentence. Petitioner first contends that the trial court incorrectly scored "Offense Variable 5" under the Michigan Sentencing Guidelines. Petitioner further alleges that there were grounds for the trial court to depart below the applicable sentencing guidelines range. Petitioner further contends that the sentence that he received was disproportionate.

A sentence imposed within the statutory limits is not generally subject to habeas

18

review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). The offense of second-degree murder carries a sentence of any term of years up to life in prison. Petitioner received a sentence of eighteen to thirty years in prison on this offense. Because Petitioner's sentence was within the bounds set by statute, this court will not disturb the sentence on habeas review. *Welch v. Burke*, 49 F. Supp. 2d at 992, 1009-10 (E.D. Mich. 1999).

Petitioner is also not entitled to habeas relief on his claim that the trial court improperly scored his sentencing guidelines range. A Michigan trial court's allegedly improper interpretation of the state's sentencing guidelines is not a cognizable claim for federal habeas review. *Whitfield v. Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001); *Cook*, 56 F. Supp. 2d at 797. Petitioner has no state created liberty interest in having the Michigan sentencing guidelines applied rigidly in determining his sentence. *Thomas v. Foltz*, 654 F. Supp. 105, 106-107 (E.D. Mich. 1987). To the extent that Petitioner is claiming that his sentence violates the Michigan state sentencing guidelines, his claim is not cognizable in a habeas proceeding because it is a state law claim. *Id.; see also Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Moreover, any claim that the trial court refused to depart below the sentencing guidelines range would not entitle him to habeas relief. *Cf. Welch*, 49 F. Supp. 2d at 1009 (petitioner not entitled to habeas relief on claim that trial court improperly departed above the sentencing guidelines range).

Even if the court were to consider the merits of the claim, it would be denied.

19

Section 35(2) of Michigan's Code of Criminal Procedure directs the trial court to "Score 15 points if the serious psychological injury to the victim's family *may* require professional treatment.  In making this determination, the fact that treatment has not been sought is not conclusive."  Mich. Comp. Laws § 775.35(2) (emphasis added). Therefore, the trial judge did not err in assessing the 15 points for Offense Variable 5 and the Petitioner is not entitled to habeas relief on this claim.

Petitioner is also not entitled to relief on his disproportionate sentencing claim. The U.S. Constitution does not require that sentences be proportionate.  In *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), a plurality of the U.S. Supreme Court concluded that the Eighth Amendment does not contain a requirement of strict proportionality between the crime and sentence.  The Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime.  *Harmelin*, 501 U.S. at 1001.

Successful challenges to the proportionality of a particular sentence in non-capital cases are "exceedingly rare."  *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). Federal courts will therefore not engage in a proportionality analysis except where the sentence imposed is death or life imprisonment without parole.  *See Hastings v. Yukins*, 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002).  A claim that a sentence is imposed in violation of Michigan's sentencing law does not state a claim for relief in a habeas proceeding where there is no claim that the sentence violates the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *Id.*  Petitioner's claim that his sentence is disproportionate under Michigan law does not state a claim upon which habeas relief can be granted. *Hastings,* 194 F. Supp. 2d at 673; *Whitfield v. Martin,* 157 F. Supp. 2d at 761.

20

To the extent that Petitioner is arguing that the trial court failed to afford him individualized consideration of mitigating evidence on his behalf, this claim fails because the U.S. Supreme Court has limited its holding concerning mitigating evidence to capital cases. *Alvarado v. Hill,* 252 F.3d 1066, 1069 (9th Cir. 2001) (*citing to Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)). Because Petitioner had no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence on his behalf at sentencing. *Hastings*,194 F. Supp. 2d at 673. Petitioner is not entitled to habeas relief on his fifth claim.

## VI.  Claim # 6

Petitioner lastly contends that the trial court erred in failing to instruct the jury that Tykishe Chipp's prior inconsistent statements to the police and her preliminary examination testimony could not be used as substantive evidence.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-55 (1977).

In the present case, the jury was instructed that Tykishe Chipp's statement to the police could not be used to prove the elements of the crime, but only to help the jurors decide whether they thought that she was being truthful.  The jury was therefore informed that Chipp's statements to the police could not be used as substantive evidence.  With respect to Chipp's preliminary examination testimony, as indicated in Claim # 2, *supra*, under Michigan law, Chipp's preliminary examination testimony was given under oath and could therefore be considered by the jurors as substantive evidence.  Because Chipp's preliminary examination testimony could be used as substantive evidence, the trial court did not commit error in refusing to instruct the jury that such evidence could only be used for impeachment purposes. *See Ricketts,* 317 F. 3d at 544.

## IV.  CONCLUSION

IT IS ORDERED that the Petitioner's April 27, 2004 "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

S/Robert H. Cleland

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 30, 2005, by electronic and/or ordinary mail.

S/Lisa G. Teets
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\Even Clerk's Orders\04-71572.Irvin.Order.Denying.Habeas.Petition.2254.wpd